UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

VIRGINIA VALLEJO,
an Individual,

   Plaintiff,

v.

NARCOS PRODUCTIONS LLC,
a Delaware limited liability company;
NETFLIX, INC., a Delaware corporation;
GAUMONT TELEVISION USA LLC f/k/a
GAUMONT INTERNATIONAL TELEVISION LLC,
a Delaware limited liability company; and DYNAMO
PRODUCCIONES S.A., a foreign business entity;

   Defendants.
_____/

CASE NO.

**Jury Trial Requested**

## COMPLAINT FOR WILLFUL COPYRIGHT INFRINGEMENT AND UNFAIR COMPETITION

Plaintiff VIRGINIA VALLEJO ("Plaintiff" or "Vallejo") hereby files her Complaint sounding in willful copyright infringement and unfair competition under both the Lanham Act and Florida common law and in support provides the following:

### THE PARTIES & THE NATURE OF THE ACTION

1. Vallejo is a renowned and internationally recognized television and radio journalist, and the author of the acclaimed best-selling, "Amando a Pablo, Odiando a Escobar" in English: "Loving Pablo, Hating Escobar" (Vallejo's "Memoir").[1] As noted therein, "[t]he [M]emoir details her relationship with Pablo Escobar, and her cooperation with Colombian and United States authorities in prosecuting Alberto Santofimio Botero, ex-Senator and ex-Minister of Justice, drug

---

[1] This pleading contains several instances referring to passages from the Memoir or other writings and including translation of Spanish to English. These translations are not certified, but certified translations will be prepared in the course of proceedings as required.

cartel bosses, and others." These incredible events that are the subject of the Memoir placed Vallejo's life in jeopardy. The United States government granted Vallejo political asylum, and she is a resident of the State of Florida, residing in this judicial district.

2. Narcos Productions LLC is a limited liability company organized under the laws of the State of Delaware and having its principal place of business at 750 N. San Vicente Boulevard, #1150 East Tower, West Hollywood, California 90069, and holds itself out as "the entity responsible for producing the highly successful, critically acclaimed, and award-winning television series *Narcos*" (hereinafter "Narcos Productions").

3. Netflix, Inc. is a corporation organized under the laws of the State of Delaware with its principal executive offices at 100 Winchester Circle, Los Gatos, California 95032. Netflix produced and distributes the television program, *Narcos*, first released on or after August 28, 2015 (hereinafter, "Narcos" or the "Show").

4. Gaumont Television USA LLC f/k/a Gaumont International Television LLC is a limited liability company organized under the laws of the State of Delaware, with its principal executive offices at 750 North San Vicente Boulevard, Suite 1550 East Tower, West Hollywood, California 90069 ("Gaumont"). Gaumont produces and distributes television programming including Narcos.

5. Dynamo Producciones S.A. is, upon information and belief, a business entity organized under the laws of Colombia with its principal place of business and core executive functions located at Carrera 13 #77 A-52, Bogotá, Colombia, but also actively maintains a physical office and presence within the United States at 195 Chrystie St., Of 303H, New York, New York 10002 ("Dynamo"). Dynamo is an audiovisual producer of feature films and television, and is a producer of Narcos.

6. Netflix, Gaumont, and Narcos Productions are named in the public catalog as titleholders to a copyright pertaining to Season One of Narcos, Copyright Document Number V9913D321; Entire Copyright Document: V9913 D321 P1-5 (the "Narcos Copyright").

7. Narcos Productions, Netflix, Gaumont, and Dynamo (collectively, "Defendants") co-produced Narcos and ultimately caused it to be distributed for viewing throughout international markets including the United States and Florida. At the time of filing, Narcos is available for viewing through the Internet-based streaming video service or over-the-top provider, Netflix. Netflix also distributes digital video discs ("DVDs") and Blu-ray discs of Narcos. Defendants have also caused Narcos to be broadcast on Univision.

## JURISDICTION AND VENUE

8. Defendants regularly conduct business within the State of Florida and have likewise committed the acts complained of herein in this State that have caused injury to Vallejo within the State of Florida. This includes, but is not limited to, continuous and systematic acts relating to production of, and distribution, broadcast, dissemination and related streaming of Narcos within Florida, including through Univision with Florida-based broadcast and promotional efforts.

9. Narcos Productions, Gaumont, and Dynamo have employed Netflix to allow the show Narcos to be streamed (which in turn has made it accessible for viewing) within the State of Florida, and caused the tortious acts complained of herein to cause harm to Vallejo (who lives and resides in this judicial district).

10. Narcos Productions, Netflix, Gaumont, and Dynamo each has sufficient minimal contacts to meet the minimal jurisdictional requirements under the laws of Florida and the U.S. Constitution.

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§1331 and 1338.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

12.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391, as a substantial part of the events or omissions giving rise to the claims concern copyright claims that occurred in this judicial district.  Additionally, Defendants transact business in this judicial district including through the distribution of Narcos to Florida viewers and consumers.

## GENERAL ALLEGATIONS

### Vallejo, her life, and her Memoir

#### Journalist Vallejo

13.     An asylee from Colombia, now residing in Florida, internationally recognized journalist Vallejo created a stirring, widely consumed Memoir that is well known in the United States and abroad.  The Memoir is her original work and expression, based in large part on her personal experiences, many of which were unknown prior to publication of her Memoir.

14.     The Memoir is a work of approximately 400 pages, first published in the fall of 2007.  The Memoir was originally published in Spanish and later translated in 15 languages to be sold throughout Europe as well as North and South America.

15.     In order to protect the considerable value in the underlying expression found within her Memoir, Vallejo filed an application before the United States Copyright Office ("Copyright Office") for her Colombia based version of the 396-page book "Amando a Pablo, Odiando a Escobar" listing a first date of publication of September 22, 2007.  The Copyright Office issued TX0007105765, having an effective registration date of March 11, 2010 for the underlying text of the Memoir (herein after "Copyright Registration 1").

16.     In addition to securing these rights, Vallejo prepared and filed before the Copyright

Office second application for the Mexican published version of the 396-page book "Amando a Pablo, Odiando a Escobar" listing a first date of publication of October 2, 2007. The Copyright Office issued TX0007833787, having an effective registration date of January 6, 2014 for the underlying text of the Memoir (herein after "Copyright Registration 2") (herein both the Copyright Registration 1 and Copyright Registration 2 are collectively referred to as the "Copyrights-in-Suit").

17. The Copyrights-in-Suit in the Memoir were later monetized and authorized for purposes of a motion picture production adaptation "Loving Pablo" (hereinafter the "Authorized Film").

18. Given the considerable coverage of the Memoir, Vallejo's life experiences, and the resurgent interest in her life based on the Authorized Film, the recent re-broadcasts and Internet-based streaming of the Show and other productions pertaining to the infamous drug lord, Pablo Escobar ("Escobar"), individuals who desire an intensely personal story about Escobar know Vallejo and the Memoir as the source of a highly unique, distinctive and expressive literary work.

**Defendants' Implicated Show - Narcos**

19. Defendants, Netflix, Gaumont, and Dynamo are producers of Narcos, and Narcos Production is listed as an owner of the copyright for Narcos Season One, and has enforced intellectual property rights pertaining to the Show. Narcos, Season One, in particular, spotlights with particular focus on the love affair between Pablo Escobar and a Colombian journalist and television personality, bearing a name which unquestionable caricaturizes Virginia Vallejo: *Valeria Velez.*

20. Defendants offer and widely disseminate Narcos throughout the United States, including within the State of Florida, as an over-the-top or streaming product, as well as

additionally distribute that Show in both DVD and other commonly desired digital formats.

21. Season One of Narcos includes ten (10) episodes.

22. Defendants initially released Season One of Narcos on August 28, 2015. The Show has been a critical and commercial success for Defendants, although, though little data is publicly available on viewership.

23. The Show is currently available for download (via sale and/or rental) through various platforms, including Netflix (subscription-based), Amazon, eBay, and Best Buy, and broadcast nationally in the United States and elsewhere on Univision, including as below:

| Platform | Release's date or Price |
|---|---|
| Best Buy | $12.99 (DVD), $17.99 (Blu-ray) |
| Netflix | August 28, 2015 |
| Amazon | $12.61 (DVD) |
| Ebay | $26.00 |
| Univision Network | August 22, 2016 |

Narcos has been broadcast in numerous countries, including on or since August 28, 2015:

| Country |
|---|
| Austria |
| Belgium |
| Switzerland |
| Germany |
| France |
| Netherlands |
| United States |
| Japan |
| Spain |
| Portugal |
| Italy |

24. Well before Defendants produced the Show, the Memoir was an international best seller.

25. As such, Defendants had considerable exposure and access to the Memoir (through its wide spread dissemination) which is protected by both Copyrights-in-Suit. Defendants have

6

had a reasonable opportunity to view the Memoir, through its wide spread dissemination and availability as an international best seller, including availability both on-line and through sale from national retail book sellers (including through Amazon.com).

26.     Despite such access (including through wide spread dissemination), Defendants did not furnish any consideration or attribute any credit to Vallejo for the Show.

27.     Upon comparison of Narcos with the Memoir, there are multiple expressions – all of which go beyond scenes-a-faire – including certain specific, unique and highly creative plot points and more specifically Defendants' Colombian television journalist "*Valeria Velez*" character is based upon, and duplicative of, the Memoir's original expressions through the autobiographical recounting by Vallejo herself. Moreover, these specific, unique and highly creative plot points include very detailed settings, events unknown to the public save for their inclusion and expression in the Memoir.

28.     In short, the underlying original expression found within Vallejo's autobiographical Memoir unmistakably somehow found its way into *multiple* instances of expression found within Season One of Narcos.

### The Caress of a Revolver
### Episode 3, Season 1

29.     As one initial example (of several), in Narcos Season One, episode 3, from approximately minutes 4:00 to 5:15, "*Valeria Velez*" has an intimate encounter with Pablo Escobar that involves a revolver.  First, the *Valeria Velez* character is clearly based on the Memoir's autobiographical recount of Vallejo's profession, standing, and unique relationship with Escobar. Moreover, this detail of an intimate encounter between Vallejo and Escobar was not in the public domain until Vallejo revealed it upon publishing her Memoir.  Specifically, the original expression the underlying event is referenced in the Memoir's chapter: *La caricia de un revolver (The caress*

7

*of a revolver).*

30.  The foregoing substantial similarities between the Memoir and Episode 3 of Narcos Season One are far from happenstance. What is more, a closer side-by-side comparison of the expressions found within the Memoir and those contained within the Show further aggregate to confirm yet *additional* substantial similarities:

### Escobar's Wife Meets Vallejo (Velez)
### Episode 2, Season 1 of the Show

31.  In the Show, Escobar introduces Valeria Velez to his wife at an early civic event intended to propel Escobar into politics. Escobar's wife, Victoria Henao ("Henao"), is portrayed as uncomfortable in the setting, outwardly cold toward Velez upon their meeting, and developing unease with Escobar's elevating profile and the crowd. This scene is based on Vallejo's Memoir's unique and original expression of that very meeting and event in her chapter titled, "Dos futuros presidents y *Veinte poemas de amor.*" This unique scenario closely approximates Vallejo's specific and exacting recount of a non-public, intimate exchange among her, Escobar, and Henao, inclusive of and dependent upon Vallejo's expression of same in her Memoir.

### *That* Palace in Flames & *The* Palace in Flames
### Episode 4, Season 1 of the Show

32.  Episode 4 of Season 1 of Narcos misappropriates unique expressions found in the Memoir's chapter, "That Palace in Flames," (*"Aquel palacio en llamas"*). **_Defendants went so far as copying Vallejo's Memoir chapter title for the title of this pivotal and gripping episode because of the fact that it is the most stirring and revelatory chapter in Vallejo's Memoir._**

33.  Both Vallejo's book chapter and this episode recount the deadly and tragic raid on Colombia's Palace of Justice. M-19, or the 19th of April Movement, was known in the 1980s as an armed guerilla group operating in Colombia. The Palace of Justice housed Colombian

government officials and jurists, including the Supreme Court of Colombia. On November 6, 1985, M-19 carried out an armed raid on the building, taking hostages, leading to a deadly, armed stand-off with Colombia's military.

34. At the time of the Memoir's publication, there was no judicial or historical proof that Escobar had contributed to M-19's siege on the Palace of Justice. Indeed, it was not until Vallejo recounted the meeting between Escobar and the head of M-19 in her Memoir, reporting that Escobar paid M-19 to commit this attack, that this suspicion found evidence. Indeed, after publication of the Memoir, the case regarding the Palace of Justice was re-opened with a truth commission to study the tragedy, and Vallejo was called to testify about the unique and original expressions in her Memoir pertaining to this tragedy and its resulting investigation.

35. This episode of Narcos contains a scene in which Escobar personally meets with the leader of the rebel group, M-19. In the show, this person is named *Iván Torres*. In the Memoir, Vallejo recounts the personal meeting between Escobar and M-19 leader, Iván Marino Ospina. While Escobar's connection to M-19 is part of the historical record, it was Vallejo's Memoir that presented a unique expression of this in-person meeting, as well as of Escobar's assumption of solidarity with the group's cause, speaking in tones of Communist-style brotherhood with M-19.

36. Moreover, Vallejo recounts Escobar's payment to M-19 for the siege of the Palace of Justice.

37. As shown by the foregoing, Defendants have misappropriated multiple separate and independent original portions of Vallejo's unique protectable expressions (none of which constitute scenes-a-faire) found within the two (2) Copyrights-in-Suit.

38. As shown by the foregoing examples, Defendants' taking of this separate, unique, and artistic expression of the events and imagery found within the two Copyrights-in-Suit was

9

done without the knowledge, permission, authority, license, or right of Vallejo.

39. What is more, Defendants not only misappropriate portions of Vallejo's highly unique protected expressions, but they do so by creating a would-be stand-in character – where *Defendants chose the name with initials V.V.* so as to intentionally and unquestionably link Velez as Vallejo.

40. Indeed, the actor portraying Velez, Stephanie Sigman, is quoted[2] as admitting the obvious, stating:

| "Hago a Valeria Velez, un personaje distinto basado en la amante de Pablo Escobar, Virginia Vallejo, un personaje importante en Colombia". | "I play Valeria Velez, a different character based on Pablo Escobar's lover, Virginia Vallejo, an important person in Colombia." |
|---|---|

41. Without question, Defendants intended not only to misappropriate the most valuable and gripping portions of Vallejo's Memoir as the gravamen of Narcos, but went even further by adopting a character whose name and characteristics all clearly associate with Vallejo's notoriety, goodwill and publicity rights – all in a deliberate and unbridled effort to increase the economic value of the Show.

42. As such, Defendants misappropriated the goodwill associated with Vallejo's work for unauthorized commercial purposes and represented the Show in a manner that suggests it was approved, endorsed, sponsored, licensed and/or affiliated with Vallejo.

43. Upon information and belief, Defendants acted knowingly and willfully in the way

---

[2] Gabriela Acosta, Entrevista exclusiva con la nueva chica Bond mexicana, *available at*: https://www.publimetro.com.mx/mx/noticias/2015/03/11/entrevista-exclusiva-con-la-nueva-chica-bond-mexicana.html (last visited August 22, 2018).

and manner that it declined to seek right or license from Vallejo for permission to adapt portions of the Memoir, but used expressions of events and statements in the Memoir for Narcos, nonetheless. This information and belief is based in part on the commercial success and notoriety of the Memoir for a period of years before the development of Narcos.

44. Moreover, the mimicry of Vallejo's chapter name (That Palace in Flames) coupled with the other misappropriations of unique expressions (The Caress of a Revolver) further confirm this intentional and knowing misconduct – all designed to suggest an affiliation and/or endorsement by Vallejo of these portions of Season One of the Show. The end result of Defendants' collective misconduct is the unauthorized exploitation of both of Vallejo's copyright registrations. Defendants' ensuing promotion of both the Show, and ultimate commercial success, has resulted in considerable pecuniary gain to Defendants.

45. All of the foregoing has caused irreparable harm to Vallejo.

**COUNT I**
**COPYRIGHT INFRINGEMENT**
**(United States Copyright Registration TX0007105765)**

46. This Count I is an action for damages based on copyright infringement in violation of 17 U.S.C. § 501, *et seq.*

47. Vallejo repeats and re-alleges the allegations of paragraphs 1-45 of this Complaint as though fully set forth herein.

48. Vallejo is the owner of a copyright for the original work of authorship for the Memoir.

49. The United States Register of Copyrights issued Copyright Registration No. TX0007105765 regarding the Memoir (the "Copyright Registration 1").

50. Copyright Registration 1 is both valid and subsisting.

51. Vallejo is the owner of the entire right, title and interest in and to Copyright Registration 1, which protects the Memoir.

52. Defendants directly and indirectly infringed Copyright Registration 1 by violating the exclusive rights of Vallejo, through Defendants' copying, reproduction, distribution and adaptation of this text, namely through the preparation, distribution, dissemination, broadcasting, streaming and any and all related acts of display of the Show.

53. Defendants also controlled and financially benefitted from the Show.

54. Upon information and belief, Defendants' infringing activities were knowingly engaged in with a willful and reckless disregard of Vallejo's rights.

55. Defendants' reproduction, preparation of derivative copies, advertising, distribution, and broadcast of the Show was, and continues to be, without license, and therefore constitutes an infringement in violation of 17 U.S.C. § 501.

56. Vallejo has suffered a compensable injury due to the infringing activities of Defendants.

57. Vallejo is entitled to recover either statutory and/or actual damages incurred as a result of Defendants' infringing activities.

## COUNT II
## COPYRIGHT INFRINGEMENT
**(United States Copyright Registration TX0007833787)**

58. This Count II is an action for damages based on copyright infringement in violation of 17 U.S.C. § 501, *et seq.*

59. Vallejo repeats and re-alleges the allegations of paragraphs 1-45 of this Complaint as though fully set forth herein.

60. Vallejo is the owner of a copyright for the original work of authorship represented

by the Memoir.

61. The United States Register of Copyrights issued Copyright Registration TX0007833787 regarding the Memoir (the "Copyright Registration 2").

62. Copyright Registration 2 is both valid and subsisting.

63. Vallejo is the owner of the entire right, title and interest in and to Copyright Registration 2, which protects the Memoir.

64. Defendants directly and indirectly infringed Copyright Registration 2 by violating the exclusive rights of Vallejo, through Defendants' copying, reproduction, distribution, and adaptation of this text, namely through the preparation, distribution, dissemination, broadcasting, streaming and any and all related acts of display of the Show.

65. Defendants also controlled and financially benefitted from the Show.

66. Upon information and belief, Defendants' infringing activities were knowingly engaged in with a willful and reckless disregard of Vallejo's rights.

67. Defendants' reproduction, preparation of derivative copies, advertising, distribution, and display of the Show was, and continues to be, without license, and therefore constitutes an infringement in violation of 17 U.S.C. § 501.

68. Vallejo has suffered a compensable injury due to the infringing activities of Defendants.

69. Vallejo is entitled to recover either statutory and/or actual damages incurred as a result of Defendants' infringing activities.

## COUNT III
## FLORIDA COMMON LAW UNFAIR COMPETITION

70. This Count III is an action under the common law of the State of Florida for unfair competition against Defendants.

71. Vallejo repeats and re-alleges the allegations of paragraphs 1-45 of this Complaint as though fully set forth herein.

72. By misappropriating Vallejo's text works and passing it off as their own, Defendants utilized unfair means to usurp the good will and reputation of Vallejo and her well-known Memoir.

73. Defendants are misappropriating and falsely describing to the general public the origin and source of the Show so as to cause confusion and mistake by the consumer as to the source and origin of its production.

74. Vallejo has no adequate remedy at law and has suffered harm and injury to her reputation.

75. Upon information and belief, Defendants' acts are willful, wanton, intentional and malicious.

## COUNT IV
## FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

76. This Count IV is an action for damages and relief under the Lanham Act, 15 U.S.C. § 1125(a) regarding Defendants' acts constituting unfair competition.

77. Vallejo repeats and re-alleges the allegations of paragraphs 1-45 of this Complaint as though fully set forth herein.

78. Through her decades in the public eye in Colombia and abroad as a television journalist, and through international news coverage about her flight from Colombia, and thereafter the international commercial success of the Memoir and other public notoriety regarding her larger-than-life story, Vallejo has achieved certain source identifying characteristics regarding her name and likeness – as well as indicia regarding her persona. Those rights are exclusive to Vallejo.

79. Defendants – through their use of Vallejo's likeness and approximation of her name, along with unique expressions from her Memoir – have employed and/or used Vallejo's indicia, including an close derivative of her name and related symbolism for purposes of advertising, marketing and promoting the Show in interstate commerce including but not limited to under the description:

> "This dramatization is **_inspired by true events_**. However, certain scenes, characters, names, businesses, incidents, locations and events have been fictionalized for dramatic purposes."

(emphasis added).

80. Cross-references to, and conflation and association of, the Velez character with Vallejo abound. For example, in addition to Ms. Sigman's quoted statement above, Wikipedia couples descriptions of actor Sigman's role as a "character based on Virginia Vallejo, in the Netflix crime thriller, *Narcos*."[3] On the Narcos Season One page, the Velez character is described as "a Colombian journalist who also serves as Pablo Escobar's mistress, based on Virginia Vallejo."[4]

81. This year, a journalist sought an interview from Vallejo, evidencing this very sort of confusion:

> This is Robin from the Dutch Television Show: Shownews. I am writing an item about Netflix using the book of Virginia Vallejo in the script of Pablo Escobar and was wondering if I could ask some questions about this. You can reach me via ▓▓▓▓▓▓▓▓. Thanks in advance!

Vallejo heard from numerous, other journalists, inquiring about her perceived role in Narcos.

82. Another article also misidentified the Memoir as the "source of the Narcos series" earlier this year:[5]

---

[3] *See* https://en.wikipedia.org/wiki/Stephanie_Sigman (last visited August 22, 2018).
[4] *See* https://en.wikipedia.org/wiki/Narcos_(season_1)#Recurring_characters (last visited August 22, 2018).
[5] Andrés Guerra, Pablo Escobar's lover: "He became a monster when I left him and started using dynamite" La Vanguardia (March 31, 2018),

ANDRÉS GUERRA, BARCELONA
03/31/2018 00:05 | Updated 05/04/2018 18:48

**Gabriel García Márquez** was the first person who read the book ***Amando a Pablo, hating Escobar***. His literary agent was also of the author and wanted the opinion of the Nobel, who had the manuscript in his hands before it was stolen. This autobiographical book, originally published in 2007 and again in 2017 by Peninsula, is the **source of the *Narcos* series** and the feature film *Loving Pablo,* with Javier Bardem as **Pablo Escobar** and Penelope Cruz as his lover. **Virginia Vallejo** (Cartago, Colombia, 1949), the star journalist in the Colombia of the eighties became the obsession of Pablo Escobar Gaviria, the biggest **drug trafficker** of history. We discussed with her the portrait of high society and politics of that time and how the narco became a monster.

ANDRÉS GUERRA, BARCELONA
31/03/2018 00:05 | Actualizado 05/04/2018 18:48

**Gabriel García Márquez** fue la primera persona que leyó el libro *Amando a Pablo, odiando a Escobar*. Su agente literario también lo era de la autora y quiso la opinión del Nobel, que tuvo el manuscrito en sus manos antes de que fuese robado. Este libro autobiográfico, publicado originalmente en 2007 y de nuevo en 2017 por Península, es la **fuente de la serie *Narcos*** y del largometraje *Loving Pablo,* con Javier Bardem como **Pablo Escobar** y Penélope Cruz como su amante. **Virginia Vallejo** (Cartago, Colombia, 1949), la periodista estrella en la Colombia de los años ochenta se convirtió en la obsesión de Pablo Escobar Gaviria, el mayor **narcotraficante** de la historia. Abordamos con ella el retrato de la alta sociedad y la política de aquella época y cómo el narco se convirtió en monstruo.

83. Defendants' television broadcasting partner, Univision, likewise equated the Velez character with Vallejo in promoting Univision's broadcast of Narcos, and suggested a relationship to the Memoir:[6]



---

https://www.lavanguardia.com/gente/20180331/442072882511/virginia-vallejo-amante-pablo-escobar-narcos-loving-pablo.html (last visited August 23, 2018) (English version provided by counsel).

[6] Univision, La verdadera historia de Virginia Vallejo, la amante de Pablo Escobar Univision.com (August 24, 2016), https://www.univision.com/series/narcos/la-verdadera-historia-de-virginia-vallejo-la-amante-de-pablo-escobar (last visited August 23, 2018) (English versions provided by counsel).

16



84. Even the *New York Times*, in an article about Narcos, reported: "The Valeria Velez character was inspired by Virginia Vallejo, an anchorwoman whose dalliances with Escobar are described in the 2007 memoir 'Loving Pablo, Hating Escobar.'"[7]

85. Such use by Defendants, including the manner in which the indicia has been used, has been designed and employed in a manner to suggest there is some consented-to and/or approved relationship between the Defendants and Vallejo, including but not limited to the suggestion that Show is based on her life, her experiences, and/or her Memoir.

86. Including for the reasons indicated by the articles and Internet sites referenced in this count, the use by Defendants of Vallejo's indicia has caused or is likely to cause, and will continue to cause, confusion among consumers in that they will believe that the Show is endorsed, affiliated, sponsored and/or approved by Vallejo.

87. Defendants' actions are in violation of 15 U.S.C. § 1125(a) in that the Defendants have used and continue to use, in relation to commercial activities, a false designation or origin,

---

[7] Scott Tobias, 'Narcos' Season 2, Episode 8: A Grieving Kingpin, N.Y. Times, Sept. 8, 2016), https://www.nytimes.com/2016/09/07/arts/television/narcos-netflix-season-2-episode-8-recap.html (last visited August 22, 2018).

or a false or misleading description which is likely to cause confusion, and to cause mistake, and to deceive, as to the affiliations, connection, or association of the Defendants and Vallejo.

88.  Vallejo has suffered, and will continue to suffer, irreparable harm resulting from the acts of unfair competition by Defendants.

89.  Vallejo has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, for all of the foregoing reasons, Plaintiff VIRGINIA VALLEJO requests this Honorable Court grant relief in the following manner:

a. Vallejo be awarded all monetary remedies available under the Copyright Act, including but not limited to, compensatory damages, statutory damages, treble damages, interest, costs and attorney's fees as legally permitted;

b. Enter a judgment against Defendants in an amount suitable to recompense Vallejo for her loss of copyright licensing revenues;

c. Vallejo be awarded all other monetary remedies available under the Lanham Act and common law of the State of Florida based upon Defendants' actions of unfair competition, including but not limited to, penalties and fines, compensatory damages, treble damages, disgorgement of profits, interest, costs and attorney's fees as legally permitted by each count respectively; and

d. Any and all other relief that this Honorable Court deems just.

## JURY TRIAL REQUEST

Plaintiff VIRGINIA VALLEJO requests a trial by jury.

Respectfully submitted this 24th day of August 2018.

>
> */s/ Robert H. Thornburg*
> Robert Thornburg
> Florida Bar No. 630829
> E-Mail: rthornburg@allendyer.com
> Joshua B. Spector
> Florida Bar No. 584142
> E-Mail: jspector@allendyer.com
> Cameron C. Murphy
> Florida Bar No. 125086
> E-Mail: cmurphy@allendyer.com
> ALLEN, DYER, DOPPELT
> +GILCHRIST, P.A.
> 1221 Brickell Ave., Suite 2400
> Miami, Florida 33131
> Telephone:    (305) 374-8303
> Facsimile:    (305) 374-8306
>
> *Attorneys for Plaintiff Virginia Vallejo*