UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-23462-CIV-SMITH

VIRGINIA VELLEJO,

       Plaintiff,

vs.

NARCOS PRODUCTIONS LLC, ET AL.,

       Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

THIS MATTER is before the Court on the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE 100], Plaintiff's Response [DE 109], and Defendants' Reply [DE 110]. The Court heard arguments of counsel at a hearing on October 11, 2019. Plaintiff's Amended Complaint [DE 50] alleges violations of two registered copyrights, issued by the United States Copyright Office for Plaintiff's memoir, *Amando a Pablo, Odiando a Escobar* (in English, "Loving Pablo, Hating Escobar"). Plaintiff's memoir, in part, recounts her time as the mistress of Pablo Escobar, a Colombian drug lord. Defendants are the producers and distributors of *Narcos*, a fictionalized series about the Colombian drug trade which is available for streaming on Netflix. Plaintiff's Amended Complaint alleges that two specific scenes from the first season of *Narcos* directly and indirectly infringe on her copyrights. Defendants maintain that Plaintiff assigned her rights to the copyrights and, therefore, lacks standing to bring her suit. Accordingly, Defendants seek dismissal for lack of subject matter jurisdiction.

## I.  THE OPTION/PURCHASE AGREEMENT

On January 4, 2013, Plaintiff and her affiliated company, Vidalinda Enterprises LLC, executed an Option/Purchase Agreement (the Agreement) with One Lane Highway, Inc. and Pinguin Films, Inc.  The Agreement gave One Lane Highway, Inc. and Pinguin Films, Inc. (together, the Purchaser) the option to purchase rights in her memoir and the associated copyrights.  The Purchaser exercised the option in mid-December 2015 upon notifying Plaintiff by letter and sending her payment pursuant to the terms of the Agreement.

The Agreement states:

> If the Option is exercised, Purchaser automatically and irrevocably shall own and be vested with, and [Plaintiff] automatically and irrevocably shall be deemed to have granted, conveyed, assigned, transferred and set over to Purchaser, exclusively . . . all right, title and interest in, to and with respect to the Property and all rights (now or hereafter known or devised) under any and all copyrights therein and thereto except for the rights reserved under Paragraph 7 below and subject to the holdback of television production rights pursuant to Paragraph 8(a) below (collectively, the "Rights").  Without limiting the generality of the foregoing, the Rights shall in any and all events include, without limitation, all of the following: (i) the sole and exclusive motion picture rights, including, without limitation, the sole and exclusive right to produce one (1) or more motion pictures or other derivative works (including, without limitation, sequels, prequels, remakes, musicals and/or serials) based, in whole or in part, on the Property and the right to fix, release, distribute, exhibit, perform, transmit, broadcast, advertise, promote and otherwise exploit such motion pictures or other derivative works by any and all means and in any and all media whether now known or hereafter devised, including, without limitation, all of the following: theatrical; non-theatrical (including airlines, ships and other carriers, military, educational, industrial and the like); pay-per-view; home video (including videocassettes, digital videodiscs, laserdiscs, CD-ROMs and all other formats); all forms of television (including pay, free, network, syndication, cable, satellite, high definition and digital); video-on-demand and near video-on-demand; and all forms of digital distribution and/or transmission (including, without limitation, the internet)*,* CD-ROMs, fiber optic or other exhibition, broadcast and/or delivery systems; all rights of communication to the public, rights of distribution to the public or other forms of public or private communication and/or distribution; and all forms of dissemination. communication or distribution to one or more identifiable locations or parties.

(DE 100-1 ¶ 6(a).)  The Rights reserved under paragraph 7 are print publication rights, author-

written sequel rights, and first negotiation rights.  (DE 100-1 ¶ 7.)  Paragraph 8 of the Agreement, titled "Frozen Rights," states:

> (a) <u>Television Production Rights</u>: Notwithstanding anything to the contrary contained herein, during the period commencing on the date hereof and ending on the date which is five (5) years from the exercise of the Option, Purchaser shall not have the right to produce, exploit or distribute an audiovisual production based on the Property in a manner intended for initial television broadcast without Owner's prior written consent. By way of clarification, the parties acknowledge and agree that the foregoing shall not restrict in any manner the production, exploitation and distribution of any audiovisual production based on the Property in a manner intended for initial exploitation by means other than television broadcast.
>
> (b) <u>Novelization Rights</u>:  The right to publish and distribute (and to authorize others to publish and distribute) novelizations relating to the Picture shall be "frozen" (i.e., neither party may exercise these rights without the prior written consent of the other).

(DE 100-1 ¶ 8.)

The Agreement defines "the Property" as:

> (a) that certain heretofore published original Spanish-language book entitled "Amando a Pablo, Odiando a Escobar" . . . (the "Book") . . . and any literary, dramatic or other material based on the Book or derived from the Book, or on which the Book is based or derived, created by or under the control of [Plaintiff], whether oral, written or otherwise, including without limitation, the plot, scenes, title(s), themes, stories, dialogue, characters, characterizations, illustrations, artwork, drawings, elements and all other contents thereof and any and all translations, adaptations and versions of any and all of the foregoing . . . (collectively the "Literary Material") and (b) Author's name . . ., likeness, life story and any episodes, exploits, events, incidents, situations, and experiences contained in or related to [Plaintiff's] life story . . . (the "Story" and with the Literary Material, the "Property").

(DE 100-1 at 1.)

Paragraph 21 of the Agreement, titled "Institution of Legal Action," assigns the "free and unrestricted right . . . to institute in the name and on behalf of [Plaintiff] suits and proceedings at law or in equity to enjoin and restrain any infringement(s) of the rights herein given."  Paragraph 21 continues stating that Plaintiff "hereby assigns to Purchaser any and all causes of action arising

3

from any such infringement(s)."

Additionally, attached to the Agreement, is a document dated January 4, 2013 and titled "Assignment," in which Plaintiff "sells, grants and assigns to Purchasers all right, title and interest (except certain rights expressly reserved by Plaintiff as set forth in the 'Agreement' referenced below) in the book entitled 'Amando a Pablo, Odiando a Escobar.'" (DE 100-1 at 16.)

## II. DISCUSSION

Defendants maintain that Plaintiff lacks standing because, under the terms of the Agreement, upon exercise of the option, Plaintiff assigned to the Purchaser "all right, title and interest in, to and with respect to the Property and all rights (now or hereafter known or devised) under any and all copyrights therein and thereto except for the rights reserved under Paragraph 7 below and subject to the holdback of television production rights pursuant to Paragraph 8(a)." Defendants argue that this broad assignment of rights divested Plaintiff of any rights under the copyright, except for the reserved publication rights under paragraph 7. Thus, the Purchaser is the owner of the copyrights and is the person with standing to bring suit against Defendants.

In her response, Plaintiff first argues that the Purchaser did not exercise the option until December 2015, more than 16 weeks after the first season of *Narcos* was released; therefore, she still owned the rights to her memoir and copyrights at the time of the time of Defendants' infringement and, thus, has standing to sue. Plaintiff contends that under the terms of the Agreement, the Purchaser obtained no rights to the memoir or copyrights prior to exercising the option. The first season of *Narcos* was released for streaming on Netflix on August 28, 2015. Purchaser exercised the option under the Agreement in December 2015. Thus, Plaintiff held all rights in her memoir and the copyrights from the time of the release of *Narcos* until the time of the option exercise and has standing to sue for damages incurred during that time period. Plaintiff

4

also argues that the assignment was only an assignment of the right to make a motion picture and, therefore, she still holds all other rights, including those to make a television series.

Defendants raise three arguments to counter Plaintiff's timing argument: (1) the assignment actually occurred on the date the Agreement was signed, January 4, 2013; (2) Plaintiff has not pled this truncated claim and she cannot use her response to the instant motion to amend her complaint; and (3) Plaintiff assigned the right to bring this suit in paragraph 21 of the Agreement, which assigned Plaintiff's rights to institute legal action. Defendants also argue that the scope of the assignment is much broader than Plaintiff contends. The Court will address each of these arguments.

### A.   The Assignment Occurred Upon the Execution of the Option

Relying on paragraph 8 of the Agreement, Defendants maintain that the assignment of Plaintiff's rights occurred upon the execution of the Agreement, on January 4, 2013. Specifically, Defendants rely on the phrase, "during the period commencing on the date hereof and ending on the date which is five (5) years from the exercise of the Option." Defendants argue that the "commencing on the date hereof" language would be superfluous if the assignment did not take place at the time of execution because there would have been nothing to freeze unless the assignment occurred upon execution of the Agreement.

Adopting Defendants' reading of paragraph 8, however, would render large portions of the Agreement superfluous. If execution of the Agreement resulted in the assignment of Plaintiff's rights, then there would have been no need for the Purchaser to exercise the option because it already would have held the rights that exercising the option would convey. Such an interpretation of the Agreement would render much of the Agreement meaningless, including paragraph 6, which sets out the rights conveyed "if the Option is exercised," and paragraphs 2 and 3, which set out the

5

price of the option and how to exercise the option. Thus, Defendants' interpretation would lead to an absurd result. Clearly, the parties to the Agreement intended the rights to pass to the Purchaser upon the exercise of the option. Consequently, Plaintiff retained all her rights in the memoir and copyrights until the Purchaser exercised the option in December 2015.

### B. Plaintiff's Failure to Plead the Limited Damages Period is Not a Standing Issue

Defendants argue that the Court lacks subject matter over a claim based on the limited damages period because Plaintiff did not plead an infringement claim based on the sixteen-week time period between the release of *Narcos* in August 2015 and the exercise of the option in December 2015. Defendants argue that Plaintiff is, thus, essentially attempting to amend her complaint and Plaintiff has not actually sought to amend her complaint to adjust the time period of the alleged infringement. While that may be the case, Defendants have not shown how this amendment issue affects whether Plaintiff has standing to bring her claim.

### C. Plaintiff Did Not Assign the Right to Sue for Past Infringement

Defendants argue that, even if Plaintiff retained her rights until the Purchaser exercised the option, she assigned the right to bring this suit to the Purchaser. The Agreement was executed on January 4, 2013, prior to the release of *Narcos*. Paragraph 21 of the Agreement expressly assigned "any and all causes of action" arising from infringement of Plaintiff's rights. Paragraph 21 gives the Purchaser express permission to bring suit in Plaintiff's name. Defendants argue that such language would only be necessary if the assignment of the right to institute legal action included causes of action that accrued prior to the exercise of the option. However, Defendants' interpretation of paragraph 21 does not comport with the law.[1]

---

[1] To the extent that Defendants argue that paragraph 21 assigned the Purchaser the right to sue at the time the Agreement was executed, such argument also fails. Under section 501(b) of the

Defendants cite to *Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698 (5th Cir. 1969),[2] in support of their argument that Plaintiff assigned her right to sue for past infringement to the Purchaser. *Prather* held that, in order to assign the right to assert a claim for prior infringement of a copyright, the assignment must state in "no uncertain terms" that it includes causes of action for "past, prior, accrued damages." *Id.* at 700. The language transferring causes of action for prior infringements must be "explicit." *Id.* In *Prather*, the contract stated that the assignment included "any and all causes of action that may have heretofore accrued . . . for infringement of said copyright." *Id.* at 699 n.1. The language in the Agreement at issue here is not as explicit. While the "any and all causes of action" language in paragraph 21 of the Agreement is broad, the Agreement does not contain any explicit reference to past causes of action or accrued causes of action. Defendants have not cited to a single case where a court held that an assignment included past, accrued causes of action where the language of assignment did not include an explicit reference to past or accrued causes of action. Thus, the language in paragraph 21 of the Agreement did not include an assignment of the right to sue for past infringement. *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) (stating that "if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them."); *Infodeck, Inc. v. Meredith-Webb Printing Co., Inc.*, 830 F. Supp. 614, 620 (N.D. Ga.

---

Copyright Act, only a legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for infringement. 17 U.S.C. § 501(b). At the time the Agreement was executed, Plaintiff did not assign the copyright right to the Purchaser. Thus, any assignment of a right to institute legal action did not become valid until Plaintiff had assigned the copyright to the Purchaser, which occurred upon the execution of the option.

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

1993) (finding standing to bring suit for past infringement based on an assignment of "the right to bring suit on all accrued causes of action based on the copyright").

### D. Plaintiff Assigned More than Motion Picture Rights

Plaintiff argues that the Agreement assigns to the Purchasers *only* the exclusive motion picture rights and, thus, she still holds all other rights, including the right to sue over *Narcos'* alleged infringement of the book. The Agreement states that it shall be construed under the laws of California. (DE 100-1 ¶ 24.) Under California law, a "contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636 (West). Further, the "language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638 (West).

Contrary to Plaintiff's assertion that the Agreement only assigned motion picture rights, the Agreement uses broad language to assign "all right, title and interest . . . under any and all copyrights." Thereafter it clarifies that those rights "include, without limitation" the motion picture rights. Plaintiff argues that this clarification is a limitation, but the language at the start of the very sentence setting out the movie rights says, "without limiting the generality of the foregoing." Further, the use of the word "include" is not a limitation, as Plaintiff argues. The Copyright Act states that the "terms 'including' and 'such as' are illustrative and not limitative." 17 U.S.C. § 101. This interpretation is further supported by California law, which interprets the phrase "including but not limited to" as a phrase of enlargement which indicates that enumerated examples that follow the phrase should not be construed as an exhaustive listing. *F.T.C. v. EDebitPay, LLC.*, 695 F.3d 938, 943-44 (9th Cir. 2012). Here, the Agreement used similar language. The Agreement states: "Without limiting the generality of the foregoing, the Rights

8

shall in any and all events include, without limitation, all of the following . . ." Under California law, this language indicates that the rights assigned are broader than the enumerated rights that follow. Thus, the fact that motion pictures are the only audio-visual representation mentioned in the grant of rights does not limit the grant to motion pictures because of the broad, encompassing language preceding the "including" language.

Moreover, under the Copyright Act "'Motion pictures' are audiovisual works consisting of a series of related images which, when shown in succession, impart an impression of motion, together with accompanying sounds, if any." 17 U.S.C. § 101. According to the U.S. Copyright Office "motion pictures include movies, television shows, video games, animations, and similar types of works." https://www.copyright.gov/registration/motion-pictures/. Thus, under the Copyright Act and the U.S. Copyright Office's interpretation of the Copyright Act, each episode of *Narcos* would constitute a "motion picture." Consequently, even if Plaintiff had only assigned "motion picture" rights, that assignment would include the rights that would relate to *Narcos*.

The only limitations on the assignment contained in the Agreement are those specifically reserved under paragraph 7 and paragraph 8(a). Paragraph 7 reserves Plaintiff's publication rights and, thus, would not support Plaintiff's argument. Paragraph 8, titled "Frozen Rights," prevents the Purchaser from making an audiovisual production "intended for initial television broadcast" based on the Property, for 5 years from the exercise of the option, without Plaintiff's consent. Paragraph 8, however, does not actually reserve the television broadcast rights for Plaintiff. Regardless, *Narcos* does not fall under the rights frozen by paragraph 8 because it was not intended for initial television broadcast. Therefore, neither of these limitations support Plaintiff's arguments.

### III. CONCLUSION

As discussed above, Plaintiff assigned broad rights in her memoir and copyrights to the Purchaser. That assignment, however, did not occur until the Purchaser exercised its rights under the option. Although the assignment of rights was broad, it did not include the assignment of past, accrued causes of action for infringement. Consequently, under the terms of the Agreement, Plaintiff retained all rights in her memoir and copyrights until the Purchaser exercised the option and Plaintiff has standing to sue Defendants for infringement occurring from the time *Narcos* was released until the time the Purchaser exercised the option. Finally, Plaintiff's failure to plead the limited time period for her infringement claim does not effect whether Plaintiff has standing to bring the instant action and the Court's subject matter jurisdiction.

Accordingly, it is

**ORDERED** that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE 100] is **DENIED**.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 28th day of October, 2019.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record