UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-23462-CIV-SMITH

VIRGINIA VELLEJO,

       Plaintiff,

vs.

NARCOS PRODUCTIONS LLC, ET AL.,

       Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the Defendants' Motion for Summary Judgment [DE 77], Plaintiff's Response [DE 88], Defendants' Reply [DE 93], Plaintiff's Motion for Summary Judgment [DE 80], Defendants' Response [DE 90], and Plaintiff's Reply [DE 94]. Plaintiff's Amended Complaint [DE 50] alleges violations of two registered copyrights, issued by the United States Copyright Office for Plaintiff's memoir, *Amando a Pablo, Odiando a Escobar*, in English, "Loving Pablo, Hating Escobar." Specifically, Plaintiff alleges that Defendants, the producers and distributors of the show *Narcos*, directly and indirectly infringed on her copyrights in two specific scenes from the first season of the show. Defendants, arguing that there is no copyright protection for historical fact, move for summary judgment on both counts. Plaintiff maintains that she is entitled to summary judgment because the "average lay observer" would recognize the two scenes as having been copied from her copyright protected work. For the reasons set forth below, Defendant's Motion for Summary Judgment is granted and Plaintiff's is denied.

## I. UNDISPUTED MATERIAL FACTS[1]

Plaintiff, Virginia Vellejo, authored the memoir *Amando a Pablo, Odiando a Escobar*. Plaintiff owns the copyright in two Spanish-language versions of the book, Copyright Registration TX0007105765 and Copyright Registration TX007833787 (collectively, the "Memoir"). The Memoir is factual. (DE 79-2 Nos. 4, 6-7; Pl. Dep. [DE 79-3] 42:8-10.) According to Plaintiff, the facts in the memoir are "all true." (Pl. Dep. 42:8-10.) Plaintiff, a well-known Colombian journalist and anchorwoman, had a romantic relationship with Pablo Escobar from mid-1983 until September of 1987. Plaintiff's Memoir, among other things, chronicles Plaintiff's relationship with Escobar, as well as the rise of the Colombian drug cartels.

Defendant Narcos Productions LLC produced the television series *Narcos*, which is about the Colombian drug trade. Defendant Gaumont Television USA LLC caused the series to be distributed throughout international markets. Defendant Netflix, Inc. made the series available for public viewing on its internet-based streaming video service and licensed the first season of *Narcos* to be broadcast on Univision.

Plaintiff's Memoir contains two chapters at issue: "Caress of a Revolver" and "That Palace in Flames."[2] The "Caress of a Revolver" chapter portrays an encounter between Plaintiff and Escobar, in which Escobar uses a gun in foreplay with Plaintiff. Plaintiff alleges that a scene from Season One, Episode Three of *Narcos* infringes on her copyright because it is a sex scene between Escobar and a character named Valeria Velez[3] involving a gun (the "Revolver Scene").

---

[1] Citations to facts that have been admitted by both sides have been omitted.
[2] All of the quotes from and descriptions of the Memoir come from the English language version of Plaintiff's Memoir, filed by Plaintiff at DE 76-1. While Defendants have filed a certified translation of the chapters and passages at issue, at DE 79-6, the differences between the two versions are minor and irrelevant to the issues before the Court.
[3] For purposes of their Motion for Summary Judgment, Defendants concede that the Velez

2

"That Palace in Flames" chapter recounts a meeting between Escobar, Plaintiff, and Ivan Marino Ospina, one of the heads of M-19, a Colombian guerilla organization. Plaintiff alleges that a scene from Season One, Episode Four of *Narcos* infringes on her copyright because it is a scene of a meeting between Escobar and a man named "Ivan" who is a leader in M-19 (the "Meeting Scene"). For purposes of the Motions, Defendants concede that they had access to Plaintiff's Memoir during the writing and making of season one of *Narcos* and that there was factual copying of portions of the Memoir. *See* DE 77 at 5 n.5; DE 90 at 2.[4]

*The Revolver Scene*

    *i. The Memoir*

In the Memoir chapter "Caress of a Revolver," Escobar takes Plaintiff to a penthouse, which is not described, telling her that a surprise is waiting for her. (DE 76-1 at 13.) Plaintiff sits in a low-backed chair and he speaks to her in a "threatening tone and an ice-cold expression in his eyes." (*Id.*) He then says:

> So now you see who has the higher IQ here. Not to mention who's got the balls, right? And if you complain or make one false move while I'm preparing the surprise, I'm going to rip that dress in two, film what comes next, and sell the video to the media.

(*Id.*) He then ties a black blindfold over Plaintiff's eyes, while humming "Feeling' Groovy" by Simon and Garfunkel and asks where he put the handcuffs. (*Id.*) Plaintiff protests to the handcuffs and being gagged and he relents, stating that he "would never underestimate a panther with delusions of genius." (*Id.*) She responds, ". . . I would never underestimate a criminal with

---

character refers to Plaintiff. *See* DE 77 at 3 n.3.

[4] A substantial portion of Plaintiff's Statement of Material Facts and her Motion for Summary Judgment focus on the facts and issues relating to Defendants' access to the Memoir and whether information from the Memoir was used by Defendants. However, because Defendants have conceded both of these issues, Plaintiff's facts and arguments related to these issues need not be considered or addressed by the Court.

delusions of a schizophrenic." (*Id.*) She then hears him open a safe and load six bullets into a revolver. (*Id.*) Then he is behind her, "speaking into my ear in a whispery voice while his left hand holds me by the hair and the other slides the barrel of the gun in circles on my neck, around and around." (*Id.*) They then exchange several comments before Escobar asks Plaintiff if it is terrifying to have a gun pointed at her by a murderer. (*Id.* at 14.) Plaintiff responds:

> "Quite the opposite: it's absolutely exquisite! Ooohhh . . . what could be more divine . . . . more sublime," I say, throwing my head back and sighing in pleasure while he unbuttons my shirt dress and the gun starts to descend along my throat toward my heart. "And, in any case, you're only a sadist . . . not a murderer."

(*Id.*) He tells her to tell him why she likes it so much, as he starts kissing her neck and shoulders. (*Id.*) She continues to describe the gun and the sensations as "the revolver descends slowly in a straight line down my breast and my diaphragm, across my waist and toward my abdomen." (*Id.*) She then tells him "I swear to you Pablo, if you go one millimeter lower I'll get up from this chair, go back to Bogota, and you'll never see me again!" (*Id.*) He relents "with a guilty little laugh of resignation." (*Id.*) Moments later, he tells her to remove the blindfold for her surprise and she sees more than a dozen of his fake passports on the floor in front of her. (*Id.* at 15.) As she tries to leap up to take a closer look, he puts a handcuff around her ankle and attaches it to the chair. (*Id.*) After they spend some time looking at the various passports with altered pictures of him, he puts the passports back in the safe, puts the revolver on a desk, removes the handcuffs, and carries Plaintiff to the bed. (*Id.* at 16.)

### ii. *Narcos*, Season One, Episode Three

The *Narcos* Revolver Scene opens with Velez in a luxurious bedroom, tied to the bed by her wrists, blindfolded and wearing a bra, panties, a garter belt and stockings. (DE 79-7 & DE 81.) Escobar is looking at a newspaper that refers to him as "un Robin Hood Paisa." (DE 79-7 & DE 81.) He approaches the bed with a gun in his hand while commenting that his name is

4

everywhere – in newspapers, magazines. (DE 79-7 & DE 81.) When he gets to the side of the bed, he throws the gun on the bed and straddles Velez. (DE 79-7 & DE 81.) He tells her she is going to have to pay for that as he pulls the blindfold off of her and leaves his arm resting on her shoulder with his hand in her hair. (DE 79-7 & DE 81.) She tells him anything he wants. (DE 79-7 & DE 81.) He then caresses her with the gun. (DE 79-7 & DE 81.) While doing so, Escobar tells Velez that she is going to help get him elected to congress. (DE 79-7 & DE 81.) She responds "Yes, Pablo. Yes." (DE 79-7 & DE 81.) While not shown, the implication is that he is using the gun to either penetrate her or touch her genitalia. (DE 79-7 & DE 81.) Velez climaxes. (DE 79-7 & DE 81.) They kiss and lay down on the bed with Escobar on top. (DE 79-7 & DE 81.) The scene ends. (DE 79-7 & DE 81.)

## *The Meeting Scene*

### *i. The Memoir*

In her Memoir, the Meeting Scene involves Escobar, a man named Ivan, and Plaintiff. (DE 76-1 at 22.) Plaintiff has been driven to Escobar's estate near Medellin. (*Id.* at 21.) Escobar tells her he is going to introduce her to Ivan Marino Ospina, who is a top leader of the M-19. (*Id.*) Escobar describes him as "the toughest of all the *comandantes*" and tells Plaintiff that Ospina is not afraid of him. (*Id.*) Escobar also warns Plaintiff that Ospina is "very high." (*Id.* at 22.) Plaintiff then describes Ospina:

> I imagine that the Amazonian commander will look like an army sergeant and wear camouflage, that he'll see me as an intruder in a meeting of very macho men, and that he'll do everything humanly possible to get rid of me so that Pablo will stay and talk about money. Ivan Marino Ospina is a man of medium build, blunt features, wispy hair, and a mustache, and beside him Escobar looks like Adonis. . . . I realize immediately that the legendary guerilla chief really isn't afraid of Pablo or of anyone else, because from the moment he lays eyes on me he doesn't take them from my face, my body, my legs; he has an inflamed gaze that to this day I don't remember ever seeing in another man.

> The M-19 leader is dressed in civilian clothes….

(*Id.*)  After chatting for a few minutes, Plaintiff leaves the room.  (*Id.* at 23.)  When she returns, she pauses outside the door listening to Escobar and Ospina talk.  (*Id.*)  Plaintiff hears Ospina mention that Escobar owes him a million dollars.  (*Id.*)  Plaintiff then reenters the room.  (*Id.*)  After a minute or two, Plaintiff asks Ospina why he entered the revolutionary fight.  (*Id.* at 24.)  Ospina tells her about atrocities committed by conservative hit squads ("birds") against his family.  (*Id.*)  Plaintiff then tells of her family's experience with the "birds."  (*Id.*)  Plaintiff then tells Ospina that she quit "the highest paid job on television for refusing . . . to refer to your group as a 'band of criminals.'"  (*Id.* at 25.)  Ospina is surprised and Escobar then interrupts to tell Ospina that Plaintiff had already been fired from another job for supporting the creation of a technicians' union.  (*Id.*)

After Ospina leaves, Plaintiff asks Escobar what the million is for.  (*Id.*)  He answers, "To recover my files and set them on fire.  And without a record, there's no way they can extradite me."  (*Id.*)  Escobar explains that in a few weeks the Constitutional Court will begin to consider his case in order to extradite him to the United States and that there are six thousand files against him at the Palace of Justice.  (*Id.* at 25-26.)  Ten days later Ospina is killed in a confrontation with the army.  (*Id.* at 27.)  Nearly three months later, the M-19 seizes the Palace of Justice.  (*Id.* at 29.)  During the siege, the M-19 makes various political demands.  (*Id.*)  During the siege, a fire breaks out and destroys thousands of documents.  (*Id.* at 30.)

Months later, Plaintiff learns from Escobar that he paid Ospina $1 million and promised another $1 million in arms and financial aid down the line.  (*Id.* at 38.)  The weapons and munitions did not make it on time because the plan had to be moved up because the court was going to start to study the extraditions, "and the evidence against us was overwhelming."  (*Id.* at 38-39.)

### ii. *Narcos, Season One, Episode Four*

In *Narcos*, prior to the Meeting Scene, Escobar and some of his associates are discussing the fate of another drug kingpin who was extradited to the United States. (DE 79-8 & DE 81.) One of them says that a motion has been filed in front of the Colombian Supreme Court challenging the legality of extradition, which is going to be considered this week. (DE 79-8 & DE 81.) Another says, "We're next, aren't we?" (DE 79-8 & DE 81.) Escobar says that a jail in the U.S. is worse than death. (DE 79-8 & DE 81.) Then he states "But remember, they want someone more than they want us. So, brothers, it's time to give them what they want, isn't it?" (DE 79-8 & DE 81.)

The Meeting Scene in *Narcos*, opens with Escobar sitting in a room with a man named Ivan. (DE 79-8 & DE 81.) Escobar is trying to make a deal with the man, who is relatively young, has a beard and mustache, and is dressed in civilian clothes. (DE 79-8 & DE 81.) Ivan is leaning back on the couch while Escobar is leaning forward on the edge of a chair. (DE 79-8 & DE 81.) There are several armed men in the room. (DE 79-8 & DE 81.) Ivan tells Escobar that he did not think their paths would cross again. (DE 79-8 & DE 81.) He continues stating that it is not that simple, it will require more men and weapons, and there will be casualties. (DE 79-8 & DE 81.) Ivan then asks Escobar how much money is involved. (DE 79-8 & DE 81.) Escobar answers two million U.S. dollars. (DE 79-8 & DE 81.) Ivan responds that it is too dangerous. (DE 79-8 & DE 81.) Escobar counters that "fighting a revolution comes with sacrifice. . . ." (DE 79-8 & DE 81.) The camera then cuts to a woman, not Velez, wearing nurse's scrubs getting out of a taxi in front of a house and walking though the house's outside gate. (DE 79-8 & DE 81.) The camera cuts back inside and a knock is heard. (DE 79-8 & DE 81.) One of the armed men go to answer the door. (DE 79-8 & DE 81.) Escobar continues talking to Ivan, telling him that "it is our duty to fight to the very end. We have an historical obligation. We can't ignore it." (DE 79-8 & DE 81.)

The woman in scrubs is then escorted into the room and Ivan says "Meet Pablo Escobar." (DE 79-8 & DE 81.) Escobar stands and the men agree that they have a deal. (DE 79-8 & DE 81.) Escobar and his men then leave. (DE 79-8 & DE 81.) The woman asks Ivan, "What the hell is this?" (DE 79-8 & DE 81.) He says that they have an agreement about money that is "necessary for the revolutionary fight." (DE 79-8 & DE 81.) He refuses to tell her more about the agreement. (DE 79-8 & DE 81.) The woman responds, "I fight for the people, not for drug traffickers." (DE 79-8 & DE 81.)

In the next scene, the woman approaches one of her co-workers and asks to speak to her husband, who works at the U.S. Embassy. (DE 79-8 & DE 81.) The woman tells her "Pablo Escobar is planning something with the communist group called the M-19. I don't know what it is, but I know it is going to be bad." (DE 79-8 & DE 81.) The co-worker calls her husband but, by the time she tells him, news of the raid on the Palace of Justice is breaking on television. (DE 79-8 & DE 81.) A voiceover then begins:

> Financed by Escobar, the M-19 guerillas stormed the Palace of Justice and occupied the Supreme Court. They took over a hundred hostages and made a bunch of demands about the redistribution of wealth, and an end to injustice and tyranny, but it was all bullshit. The military attacked, dozens of lives were lost in the carnage, including half the Colombia Supreme Court justices. Most of the M-19 were killed, some escaped, but not before accomplishing their true goal: setting fire to the room that contained six hundred thousand pages of evidence against Escobar. The entire case against him turned to ash. In the United States, the mafia makes witnesses disappear so they can't testify in court. In Colombia, Pablo Escobar made the whole court disappear.

(DE 79-8 & DE 81.) During the voiceover, film of the raid and military response is played and five men are shown, including Ivan, breaking into a file room in the Palace of Justice, splashing gasoline on the files, and lighting them on fire. (DE 79-8 & DE 81.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

**III. DISCUSSION**

To establish a claim of copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Proof of this second element requires "proof of both factual and legal copying, that is: (1) whether the defendant, as a factual matter, copied portions of the plaintiff's [work]; and (2) whether, as a mixed issue of fact and law, those elements of the [copyrighted work] that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable." *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Intern'l*, 533 F.3d 1287, 1300 (11th Cir. 2008) (internal quotations omitted). Factual copying may be inferred from circumstantial evidence "either through establishing that the works are 'strikingly similar' or through proof of access to the copyrighted work and probative similarity." *Id.* at 1300-01 (internal citations and quotations omitted). As noted earlier, for purposes of the motions for summary judgment, Defendants concede to factual copying. Where a defendant admits to factual copying, as Defendants do, a court focuses on whether such copying is legally actionable; "that is, whether there is 'substantial similarity' between the allegedly offending [works] and the protectable, original elements of the book." *Id.* at 1301 (internal quotation and citation omitted). Accordingly, the issue for the Court is whether there is "substantial similarity" between the *Narcos* scenes at issue and the protectable, original elements of Plaintiff's Memoir.[5] *See id.* at 1301.

The Eleventh Circuit has explained that to show substantial similarity, a plaintiff must

---

[5] "[N]on-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999).

establish that "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982) (citation omitted). What is copyrightable is original to the author, meaning it was "independently created by the author . . . and it possess at least some minimal degree of creativity." *Id.* at 345. As a result, facts, ideas, and concepts are not copyright protectable. 17 U.S.C. § 102(b); *Feist*, 499 U.S. at 344-45. Additionally, "*scenes a faire,* sequences of events which necessarily follow from a common theme, are not protectible." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999) (internal quotation and citation omitted). To resolve a copyright dispute, a court must compare the works in question. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 456 (11th Cir. 1994).

Neither side in the instant matter dispute that Plaintiff owns valid copyrights of her book. At issue is whether the Plaintiff can establish that the copying that took place was of protectable elements of her work. Defendants argue that the similarities between Plaintiff's Memoir and the relevant *Narcos* episodes are purely factual and, therefore, no protectable expression has been copied. On the other hand, Plaintiff contends that Defendants appropriated unique expressions from her Memoir for use in *Narcos*, in general, and for use in the Revolver Scene and the Meeting Scene, specifically. Plaintiff argues that it is incorrect to focus on the facts; a substantial similarity analysis requires an analysis of the total concept and overall feel of a work.[6] The Court will address and compare the Revolver Scenes and the Meeting Scenes from Plaintiff's Memoir and *Narcos* separately. It will also address Plaintiff's arguments regarding *Narcos* in general.

---

[6] Plaintiff also argues that parts of her Memoir are written in the style of "magical realism," resulting in creative expression that is protectable. However, Plaintiff has not pointed to a single portion of the Memoir that she claims was written in magical realism, let alone portions containing magical realism that were allegedly infringed.

11

### A. The Revolver Scene Does Not Infringe Plaintiff's Copyrights.

Plaintiff alleges that the Revolver Scene in *Narcos* directly infringes on the chapter from her Memoir titled "The Caress of a Revolver." Defendants argue that the Revolver Scene does not infringe on her Memoir because the only similarities are factual. Comparing both the facts and the overall feel of the Revolver Scene does not establish that Defendants copied any of Plaintiff's protectable expression.

Defendants argue that the only similarities are: (1) Plaintiff is blindfolded with a black blindfold; (2) Escobar uses a gun to caress her neck and chest while speaking in a menacing tone; and (3) she appears aroused. Defendants maintain that these similarities are not protectable because they are nothing more than facts; merely because Plaintiff's Memoir was the first time that these facts were made public does not make them protectable.

Plaintiff contends that there are additional similarities, including the elegant bedroom, that both Plaintiff and the Velez character are bound to furniture, Plaintiff and Velez are at the mercy of Escobar, Escobar engages in aggressive banter with Plaintiff and Velez and both respond in a submissive manner, Plaintiff and Velez are not afraid of Escobar, Escobar grabs both by the hair, Escobar touches their bare skin with a gun as sexual foreplay, and Plaintiff and Velez throw their heads back sighing and moaning with pleasure. However, comparing Plaintiff's Memoir and the *Narcos* Revolver Scene establishes that not all of these similarities actually exist and the similarities that do exist are ideas and facts.

Comparing the two scenes leads to the conclusion that they are not substantially similar. The atmosphere, or overall feel, of each of the scenes is very different. In the Memoir, contrary to Plaintiff's argument, Plaintiff does not appear afraid of Escobar and does not respond to his aggressive banter in a submissive manner; instead, she responds by verbally sparring with him

12

(Escobar: "I would never underestimate a panther with delusions of genius." Plaintiff: "I would never underestimate a criminal with delusions of a schizophrenic."). Plaintiff also spurs Escobar on, telling him that being caressed by a gun is "exquisite" and "sublime." In contrast, in the *Narcos* scene Velez does respond submissively; there is no verbal sparring or challenges to Escobar, as in the Memoir. Velez does not spur him on. Plaintiff also stops Escobar from going any further with the gun and he relents, unlike in the *Narcos* scene where Escobar uses the gun to bring Velez to a climax. The Memoir paints a picture of two people holding equal power over each other. In *Narcos*, Velez may be a willing participant but she does not hold the power in the relationship. Velez simply submits to Escobar, telling him that she will do anything he wants.

Further, and contrary to Plaintiff, many of the details in the scenes are different. Plaintiff states she is seated in a low-backed chair, while in *Narcos* Velez is tied to the bed with her arms spread wide when the scene opens. While Escobar caresses her with the gun, Plaintiff, who is blindfolded is not tied up and she is fully dressed. Only later, after Escobar puts down the gun and her blindfold is removed, is Plaintiff handcuffed to the chair by her ankle. In *Narcos*, the scene opens with Velez tied to the bed by her wrists and blindfolded. Escobar removes the blindfold before he touches Velez with the gun. While Plaintiff states that Escobar held her by the hair while he caressed her with the gun, Escobar does not hold Velez by the hair. Thus, the only similarities between these two scenes are the blindfold, caressing with a gun, and Plaintiff/Velez is aroused. These facts are not protectable. The idea of a sex scene involving a gun is not protectable. Despite Plaintiff arguing that her description of this event is filled with her vivid description of the setting, the sounds, and her thoughts and feelings at the time, Plaintiff does not point to any specific original, non-factual portions of her Memoir that have been copied. There is no dialogue that has been copied, the settings are different, the feel of the scenes are different, and how the scenes play

out are different. Consequently, Defendants are entitled to summary judgment on Plaintiff's claims based on the Revolver Scene.

### B. The Meeting Scene Does Not Infringe Plaintiff's Copyrights.

Again, Defendants argue that the Meeting Scene does not infringe on any protectable expression from Plaintiff's Memoir because the only similarities are non-protectable facts. Plaintiff argues that the Meeting Scene does infringe because it has the same themes of power and manipulation as in the Memoir. A comparison of the two scenes does not establish that Defendants copied any of Plaintiff's protectable expression.

Plaintiff lists in her motion all of the similarities: the chapter title, "That Palace in Flames" and the episode name "The Palace in Flames;" Escobar and Ivan are in a hideout; Ivan has a beard; Ivan is in civilian clothing; Ivan discusses the risk of casualties and the danger; Escobar offers to pay $2 million; Escobar uses revolutionary/communist overtones to persuade Ivan; Escobar believes his extradition to the United States is imminent; and Ivan is of medium build with blunt features. Again, not all of these similarities exist between the Memoir and the Meeting Scene and the similarities that do exist are ideas and facts, not protectable expression.

In comparing the two scenes, the first thing one notices is that, in *Narcos*, Velez is not the woman who meets with Escobar and Ivan. Further, the woman in the *Narcos* scene is not part of the conversation between Escobar and Ivan, as Plaintiff was in the Memoir. This is a significant difference because it changes the tone of the scene.

The similarities that do exist between the two scenes are not protectable expression. The most obvious similarity is the title of the chapter in the Memoir and the title of the *Narcos* episode, "That Palace in Flames" and "The Palace in Flames." However, the copyright regulations make it clear that "short phrases such as names, titles, and slogans" are not copyrightable. 37 C.F.R. §

14

202.1(a). Based on this regulation, the chapter title is not protectable and neither is the name "Ivan."

Many of the remaining similarities are factual and, therefore, not protectable. The fact that Escobar met with Ivan, a leader of the M-19, prior to the Supreme Court considering his extradition; the fact that Escobar paid a total of $2 million for the raid; and the fact that the raid occurred and resulted in the disappearance of the files about Escobar are all historical facts. These facts are not protectable. The fact that Plaintiff's Memoir was the first to make some of these facts public does not change the analysis. *See Eldred v. Ashcroft*, 537 U.S. 186, 219 (stating "every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication") (citing *Feist*, 499 U.S. at 349-50).

Plaintiff also claims that her impression of Ivan was infringed by Defendants. Plaintiff describes Ivan as wearing civilian clothes, being of medium build, and having "blunt features, wispy hair, and a mustache." The *Narcos* Ivan has a beard and a full head of thick hair. Regardless, Ivan's appearance would constitute facts. Plaintiff states that, in comparison, Escobar is an Adonis. Such a comparison may be entitled to protection. However, no such comparison is made in *Narcos*.

Finally, Plaintiff also argues that in both the Memoir and the Meeting Scene, Escobar uses "revolutionary bonding" to persuade Ivan to carry out the raid. In the Memoir, it appears that Escobar and Ivan have already made the deal when Plaintiff reenters the room and starts talking to Ivan about his reasons for joining the revolution. Plaintiff is the one who tells of her solidarity with his cause. During the conversation, Escobar tells Ivan more about Plaintiff's solidarity with the workers. In the *Narcos* scene, Escobar is the one who speaks of revolution. Thus, the way in which the "revolutionary bonding" occurs in the Memoir differs from the way it occurs in the

15

*Narcos* Meeting Scene. Further, if talk of solidarity and revolution were used to convince Ivan, such would be historical fact, which is not protectable.

Again, the overall feel of the two scenes is also quite different. In the Memoir, only Escobar, Plaintiff, and Ivan are present. Ivan, who is very high, ogles Plaintiff and chats with her and Escobar for a while about the revolution. It is clear that Ivan and Escobar have a preexisting relationship that has mutually benefited them both. In *Narcos*, it is only clear that the two have met before. Further, it is clear from the prior scene that Escobar is willing to sacrifice Ivan to achieve his goal of destroying the records – Escobar tells his associates that the government wants someone more than them, so why not give the government what it wants. In *Narcos*, both Escobar and Ivan have armed men with them at the meeting, indicating that neither trusts the other. Ivan is seated in a relaxed manner leaning back on the couch, while Escobar is leaning forward on the edge of a chair. Such postures indicate that Ivan believes that he holds the power and Escobar is the one in need of a favor. This dynamic does not seem to be present in the Memoir. Consequently, there is no substantial similarity between the Meeting Scene in *Narcos* and Plaintiff's Memoir.

### C. *Narcos* In General Does Not Infringe.

Finally, Plaintiff appears to make a few arguments about *Narcos* infringing on her Memoir, without pointing to any specific scenes. While not specifically pled in the Amended Complaint, in her motion papers, Plaintiff argues that: (1) *Narcos* has infringed on her themes of power and manipulation which are present throughout her Memoir; and (2) *Narcos* has infringed on her portrayal of Escobar as a man who is both good and evil. However, such themes, or ideas, are not protectable. *See* 17 U.S.C. § 102(b); *Feist*, 499 U.S. at 344-45. Moreover, themes of power and manipulation would be expected in any work about a ruthless criminal who rises to become one of the richest men in the world, as would themes of men who are both good and evil, which can

16

be found throughout literature.  Consequently, these general themes, which Plaintiff argues are found in her Memoir, are not protectable.

Accordingly, it is

**ORDERED** that:

1. Defendant's Motion for Summary Judgment [DE 77] is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment [DE 80] is **DENIED.**

3. All pending motions are **DENIED as moot.**

4. The Court will enter a separate judgment.

5. This case is **CLOSED.**

**DONE and ORDERED** in Miami, Florida, this 8th day of November, 2019.

_____
RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record